## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., ALAN. L. MILLER, JONATHAN BLAIR GARBER, and KEVIN P. STANTON,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF EVANSTON and LORRAINE H. MORTON, Mayor,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 08 C 3693 |

## <u>MEMORANDUM OPINION AND ORDER</u>

MARVIN E. ASPEN, District Judge:

Presently before us is Plaintiffs' Motion for Recusal.  In their motion, Plaintiffs contend that I must recuse myself pursuant to 28 U.S.C. §§ 455(a) and (b)(1) based on an article I wrote in 1976 concerning federal gun legislation.  For the reasons stated below, I decline to do so and deny the motion.

## BACKGROUND

Following the Supreme Court's recent decision in *District of Columbia et al. v. Heller*, 128 S. Ct. 2783 (2008), Plaintiffs initiated this lawsuit challenging the City of Evanston's ban on handgun possession.[1]  Plaintiffs then promptly filed this Motion for Recusal based on my comments in a 1976 *Chicago Bar Record* article.  (*See* Hon. David J. Shields & Hon. Marvin E. Aspen, *Two*

---

[1] It appears that the City of Evanston amended its City Code on August 11, 2008 in an effort to conform to the *Heller* decision and, subsequently, filed a motion to dismiss.  (*See* Mot. to Dismiss, Dkt. Nos. 19-20.)  As Plaintiffs correctly state, however, we must address the instant motion before considering any other matters.  (Reply at 1 n.1.)

*Judges Look at Gun Control*, Chi. Bar Rec., 180, 186 (Jan.-Feb. 1976), attached as Ex. 1 to Mem. in Supp. of Mot. (hereinafter "the Article").)  In the Article, and based on my experiences as a prosecutor and Illinois state court judge, I unabashedly confessed "to a bias in favor of the enactment of new federal gun control legislation."  (*Id.* at 186.)  I also expressed my amazement – relying on statistics from the early 1970s – "that the overwhelming majority of Americas who favor such legislation are continually frustrated by a minority-interest gun lobby."  (*Id.*)  I stated my support for "a strong *federal* gun control bill," based on my opinion that "[s]tate and local legislation . . . has been, and will continue to be, ineffective."  (*Id.* (emphasis in original).)  Indeed, in the footnotes, I advocated the banning of handguns at the federal level and dismissed as "untenable" the argument that the Second Amendment protects an individual, rather than collective, right to bear arms.[2]  (*Id.* at 191 nn.3 & 7.)  While I was not alone in advancing such legal positions at that time, obviously much has changed since 1976.  Nonetheless, Plaintiffs contend that recusal is warranted under 28 U.S.C. §§ 455(a) and (b)(1) because these comments evidence partiality as well as a personal bias against them.

## ANALYSIS

### A.    Disqualification under 28 U.S.C. § 455(a)

Pursuant to § 455(a), a judge must recuse himself "in any proceeding in which his

---

[2] Of course, prior to the *Heller* decision, the Supreme Court had not addressed the scope of the Second Amendment since 1939, *see United States v. Miller*, 307 U.S. 174, 59 S. Ct. 816 (1939), and the Seventh Circuit repeatedly had held that the Second Amendment right "inures not to the individual but to the people collectively," *Gillespie v. City of Indianapolis*, 185 F.3d 693, 710 (7th Cir. 1999).  *See also United States v. Price*, 328 F.3d 958, 961 (7th Cir. 2003) (reiterating constitutionality of federal felon-in-possession statute and noting that "rights under the [Second] [A]mendment can be restricted"); *United States v. McCutcheon*, 446 F.2d 133, 135-36 (7th Cir. 1971) (upholding constitutionality of registration requirement of Gun Control Act of 1968 based on *Miller*).

impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The § 455(a) inquiry is objective, asking "whether a reasonable observer, informed of all the surrounding facts and circumstances, would perceive a significant risk that the judge will resolve the case on a basis other than the merits." *Schmude v. Sheahan*, 312 F. Supp. 2d 1047, 1062 (N.D. Ill. 2004); *see also Hook v. McDade*, 89 F.3d 350, 354 (7th Cir. 1996); *N.Y. City Hous. Dev. Corp. v. Hart*, 796 F.2d 976, 980 (7th Cir. 1986); *Ramirez v. Elgin Pontiac GMC, Inc.*, 187 F. Supp. 2d 1041, 1044-45 (N.D. Ill. 2002). To discourage judge-shopping, courts consider the perspective of a reasonable person, "rather than . . . a hypersensitive or unduly suspicious person." *Hook*, 89 F.3d at 354 (*quoting In re Mason*, 916 F.2d 384, 385-86 (7th Cir. 1990)); *see also Schmude*, 312 F. Supp. 2d at 1062; *Ramirez*, 187 F. Supp. 2d at 1044. Accordingly, "trivial risks of perceived impartiality are insufficient to warrant recusal." *Schmude*, 312 F. Supp. 2d at 1062; *see also Hook*, 89 F.3d at 354. The purpose of § 455(a) is to "promote public confidence in the impartiality of the judicial process." *Schmude*, 312 F. Supp. 2d at 1062; *see also Ramirez*, 187 F. Supp. 2d at 1044; *In re Searches Conducted on Mar. 5, 1980*, 497 F. Supp. 1283, 1290-91 (N.D. Ill. 1980). In furthering this goal, a judge "is . . . obligated not to recuse himself without reason just as he is obligated to recuse himself when there is reason." *Hart*, 796 F.2d at 981 (*quoting Suson v. Zenith Radio Corp.*, 763 F.2d 304, 308-09 n.2 (7th Cir. 1985)); *see also In re African-Am. Slave Descendents Litig.*, 307 F. Supp. 2d 977, 983 (N.D Ill. 2004); *Schmude*, 312 F. Supp. 2d at 1062.

With these principles in mind, I find that no reasonable, well-informed person "would perceive a significant risk" that I would resolve this case on anything other than the merits. I reach this conclusion based on the substance of my comments and the passage of time.

1.     **The Article**

Turning first to the Article itself, I expressed no opinion on the City of Evanston's handgun ban, which is the focus of this litigation. Nor could I, as it was not enacted until six years later, in 1982. *See* Press Release, NRA-ILA, Evanston Amends Gun Ban (Aug. 15, 2008) (available at www.nraila.org/legislation/read/aspx?id=4140) (last visited Aug. 18, 2008). In fact, I did not evaluate the merits of any particular federal, state or local statute.

Moreover, and as Defendants point out, my only comment concerning local gun control legislation – such as at issue here – was wholly negative. (Ans. to Mot. at 2.) Although I repeatedly promoted enactment of *federal* gun legislation, I plainly stated that "[s]tate and local legislation . . . has been, and will continue to be, ineffective." (Article at 186; *see also* Article at 190 & n.7.) Plaintiffs discard this qualification as "irrevelant," but they cannot proffer the Article as the sole basis of their motion and then refuse to consider it in its entirety. (Reply at 4-5.) The Article plainly questions the worth of state and local gun laws and posits that a federal law is necessary because of their failures. (Article at 186 & n.7.) While my segment of the Article was strongly-worded, to be sure, my comments focused on the general subject of the potential value of *federal* handgun legislation.

It is well-established, however, that "a judge's views on legal issues may not serve as the basis for motions to disqualify." *In re African-Am. Slave Descendents Litig*., 307 F. Supp. 2d at 984; *see also Rosquist v. Soo Line R.R.*, 692 F.2d 1107, 1112 (7th Cir. 1982). In other words, "[t]he fact that a judge actively advocated a legal, constitutional or political policy or opinion before being a

judge[3] is not a bar to adjudicating a case that implicates that opinion or policy." *Weissman v. Boston Sch. Comm.*, 979 F. Supp. 915, 916-17 (D. Mass. 1997); *see Litecky v. United States*, 510 U.S. 540, 554, 114 S. Ct. 1147, 1157 (1994); *Laird v. Tatum*, 409 U.S. 824, 830, 93 S. Ct. 7, 11 (1972).  In *Laird v. Tatum*, for example, Justice Rehnquist addressed a motion seeking his recusal because he had testified before a Senate subcommittee on behalf of the Department of Justice and otherwise "previously expressed in public an understanding of the law on the question of the constitutionality of governmental surveillance."  409 U.S. at 824-25, 93 S. Ct. at 9.  Justice Rehnquist denied the motion and further commented that the "fact that some aspect of [his] propensities may have been publicly articulated prior to coming to this Court cannot . . . be regarded as anything more than a random circumstance which should not by itself form a basis for disqualification."  *Id.* at 836, 93 S. Ct. at 14 (further observing that "it would be . . . extraordinary, if [judges] had not at least given opinions as to constitutional issues in their previous legal careers").

Similarly, in *Rosquist*, the Seventh Circuit concluded that Judge Grady need not have recused himself under § 455(a) from deciding an attorneys' fees issue, where he "had, in the past, written and spoken on the subject of contingent fees."  692 F.2d at 1112.  The court held that Judge Grady was not obligated to recuse himself "merely because he holds and had expressed certain views on that general subject," particularly where "his general tenets are not so case-specific that they would pre-determine his position in" that case.  *Id.*; *see also Laird*, 409 U.S. at 839, 93 S. Ct. at 16 ("[I]t is not a ground for disqualification that a judge has prior to his nomination expressed his then understanding of the meaning of some particular provision of the Constitution."); *In re African-Am.*

---

[3] Although I was a judge in the Criminal Division of the Circuit Court of Cook County when I wrote the Article, I was not appointed to the federal bench until 1979.

*Slave Descendents Litig.*, 307 F. Supp. 2d at 984.  Based on these authorities, I find that an article written 32 years ago espousing general tenets on the need for federal gun legislation does not form a proper basis for recusal in this case.

This issue also tends to arise in a roughly analogous setting, as discussed in *Laird v. Tatum*, where a judge proposed or drafted legislation in a previous job and then is assigned a case interpreting that legislation once on the bench.  409 U.S. at 831-37, 93 S. Ct. at 11-14 (recounting several instances where Supreme Court justices did not recuse themselves "in cases involving points of law with respect to which they had expressed an opinion or formulated policy prior to ascending to the bench"); *see Barry v. United States*, 528 F.2d 1094, 1100 (7th Cir. 1976); *see also Buell v. Mitchell*, 274 F.3d 337, 345-48 (6th Cir. 2001).  In *Buell*, for example, a state inmate appealed the district judge's denial of his habeas corpus petition seeking relief from a death sentence under Ohio law.  274 F.3d at 344-48.  The district judge in that case, Judge Matia, "had sponsored the bill restoring Ohio's death penalty" as a state senator and "had expressed support for the death penalty while campaigning for Lieutenant Governor of Ohio in 1982," a decade prior to the habeas petition. *Id.* at 345.  Despite these activities, the Sixth Circuit held that "a judge is not automatically disqualified from a case on the basis of having sponsored or voted upon a law . . . that he is later called upon to review as a judge."  *Id.* at 346.  Such sponsorship of a law "is similar to the expression of an opinion on a legal issue, which does not create the appearance of impropriety," as noted above.  *Id.*

In *Barry v. United States*, the Seventh Circuit (interpreting an earlier version of § 455(a)) also affirmed a district judge's refusal to step aside where his decisions in his prior employment related tangentially to the case before him. 528 F.2d at 1096-97 (holding that judge was not required

to recuse himself although, as U.S. Attorney, he had developed a "then-novel interpretation of the

Hobbs Act," which was later used to prosecute police officers in case over which he presided).  In

so holding, the Seventh Circuit relied on Justice Rehnquist's *Laird v. Tatum* opinion and excerpted

his list of justices who heard cases despite "apparent conflicts":

> As a Senator, Hugo Black was a primary author of the Fair Labor Standards Act; yet
> as a Justice he sat in the case upholding its constitutionality and in later cases
> construing it.  As a law professor, Felix Frankfurter was a co-author of The Labor
> Injunction and a principal drafter of the Norris-LaGuardia Act; yet as a Justice he
> delivered the opinion of the Court in the Hutcheson case, which determined the
> scope of that statute.

528 F.2d at 1100 (*citing Laird*, 409 U.S. at 831-33, 93 S. Ct. at 11-13).  While these cases are not

directly on point to the present circumstances, they are instructive.  As mentioned in the Article, I

previously helped draft legislative gun control proposals.  (Article at 186.)  Although I did not

participate in the drafting of the Evanston code, these cases suggest that § 455(a) would not

automatically disqualify me *even if I had sponsored or voted upon it.*  If that connection would be

too tenuous to require recusal, it is difficult to see how my general remarks in favor of federal

handgun legislation in 1976 could possibly support Plaintiffs' motion.  On the whole, the Article

does not create an appearance of favoritism that might cause a reasonable, well-informed observer

to question my ability to evaluate Plaintiffs' challenges to the City of Evanston's gun legislation.

        **2.**      **Time**

In addition to the text of the Article itself, and despite Plaintiffs' protestations to the contrary,

the significant passage of time under these circumstances is highly relevant.  Time is always relevant

to the law, which evolves incrementally as legislation passes in the context of the political climate

and courts create legal precedent only as specific issues are presented.  Recall that, in 1976, when

I wrote the Article, the assassinations of Senator Robert Kennedy and Martin Luther King, Jr. were

recent history – with the attempted assassination of President Reagan and the Brady Law campaign

yet to come.

In *Schurz Communications, Inc. v. FCC*, Judge Posner addressed a recusal motion based

solely on an affidavit he "submitted as an expert witness on behalf of CBS in February 1977 (almost

sixteen years [prior]) in an antitrust case that had been brought in a federal district court in

California." 982 F.2d 1057, 1059 (7th Cir. 1993). Although the 1977 case and the *Schurz*

*Communications, Inc.* case before him were different in many respects "both involve[d] the general

question whether and how much the television networks should be restricted from participating in

the production and distribution of television programs." *Id.* at 1059-60. In denying the motion,

Judge Posner explicitly stated that "the lapse of time is of course one factor." *Id.* at 1061. He

further queried:

> Would a realistic observer think that an affidavit filed so many years ago – an
> affidavit that I had not read since signing it until the movants submitted it with their
> motion – had cut such a deep groove in my thinking that I could not make an
> unbiased judgment in a different case, involving a different tribunal, a different
> statute, different facts, and different issues, in an industry much changed since the
> 1970s?

*Id.* Judge Posner's reasoning and reliance on the passage of time is persuasive and equally

applicable to this matter. *See In re African-Am. Slave Descendents Litig.*, 307 F. Supp. 2d at 984-85

(denying recusal motion based on judge's general statements of legal opinion made during his

confirmation hearing almost 20 years prior to lawsuit); *see also RRCI v. Charlie's/ Diamond Ready*

*Mix, Inc.*, No. 2007-147, 2008 WL 2048355, at *4 (D.V.I. May 12, 2008) ("Finally, the long passage

of time since Tutein's prosecution [by the judge when he was a U.S. Attorney] – approximately nine

years – lends further support to the conclusion that no reasonable person could question the Court's

impartiality."). No reasonable person would determine that my comments from so long ago,

espousing my general opinions concerning the need for federal – not local – handgun regulations, amounts to a predetermination of the precise issues presented in this case, particularly because this case could not have been filed prior to the Supreme Court's landmark decision in *Heller*, handed down just weeks ago.

Attempting to twist this timing factor in their favor, Plaintiffs note that I have not commented publicly on the issue of handgun legislation in 32 years. Plaintiffs' conclusions based on this fact, however, amount to nothing more than unsupported speculation. Plaintiffs essentially claim that because I have not publicly denounced my 1976 comments, a reasonable person would believe that they have not changed and may have actually "grown over time."[4] (Reply at 4.) No reasonable, well-informed person would conclude that my silence on this issue means that I therefore must hold the same opinions that I did a generation ago about a subject that has changed dramatically, or, moreover, that those earlier opinions put my impartiality at significant risk today. A reasonable person could just as easily assume that my silence means I have altered my opinion and cared never to repeat it, or that my opinion became moot in light of subsequent events, or simply that no one again asked for my thoughts on that subject. As discussed above, federal judges are permitted to come to the bench with preexisting views on the law and, furthermore, have no duty to issue a press release should those opinions change over the course of their lifetime appointments. *See Laird*, 409 U.S. at 835, 93 S. Ct. at 13-14 ("Proof that a Justice's mind at the time he joined the Court was a complete tabula rasa in the area of constitutional adjudication would be evidence of a lack of qualification, not a lack of bias.").

**B.     Disqualification under 28 U.S.C. § 455(b)(1)**

---

[4] This latter contention is not only unfounded, but nonsensical.

"In contrast to recusal under § 455(a), §455(b) is concerned with whether the court harbors an *actual* personal bias or prejudice against one party . . . as opposed to the appearance of impartiality." *Schmude*, 312 F. Supp. 2d at 1066-67.  Pursuant to § 455(b)(1), a judge must recuse himself from a proceeding  "[w]here he has a personal bias or prejudice concerning a party."  28 U.S.C. § 455(b)(1).  "Any bias must be proved by compelling evidence, and the issue is whether a reasonable person would be convinced the judge was biased."  *Grove Fresh Distribs., Inc. v. John Labatt, Ltd.*, 299 F.3d 635, 640 (7th Cir. 2002) (internal quotation omitted); *see Hook*, 89 F.3d at 355-56.  In order to be sufficient to require recusal, "the negative bias or prejudice . . . must be grounded in some personal animus or malice that the judge harbors against [the party], of a kind that a fairminded person could not entirely set aside when judging certain persons or causes."  *Grove Fresh Distribs., Inc.*, 299 F.3d at 640 (*quoting United States v. Balistrieri*, 779 F.2d 1191, 1201 (7th Cir. 1985); *see Hook*, 89 F.3d at 355; *Schmude*, 312 F. Supp. 2d at 1067.

Here, Plaintiffs contend that the Article "creates a reasonable inference that [I] harbor[] a bias against" the Plaintiffs.  (Mem. in Supp. of Mot. at 5.)  Even if the Article's few pointed references to gun lobbyists – such as my comment about the "loud advocacy of a handful of pistol-packing enthusiasts" – created such an inference, they do not demonstrate the type of deep-seated animus warranting recusal.  (Article at 191.)  Section 455(b) requires more than a suggestion of "dislike" or "reasonable inference" of bias.  (Mem. in Supp. of Mot. at 3, 5.)  My remarks from 32 years ago simply are not "compelling evidence" of any present, personal malice against them.  *Grove Fresh Distribs., Inc.*, 299 F.3d at 640; *Hook*, 89 F.3d at 355-56; *see also Schurz Commc'ns, Inc.*, 982 F.2d at 1061 (as discussed above, stressing the "lapse of time" as relevant to a recusal motion).  I did not name or malign the Plaintiffs, nor have I previously heard of the individual

-10-

plaintiffs.  While I disagreed with gun lobbyists opposing federal handgun legislation in 1976, no reasonable person would be convinced by the Article that I am today prejudiced against these specific Plaintiffs with a bias so deep that it cannot be readily set aside to enable me to fairly judge the specific issues presented in this litigation.  *Grove Fresh Distribs., Inc.*, 299 F.3d at 640; *Hook*, 89 F.3d at 355; *see also United States v. Antonelli*, 582 F. Supp. 880, 882 (N.D. Ill. 1984) (denying motion to recuse where the judge, in a speech to a bar association, referred to *pro se* prisoner litigants as "psychopaths," because the comment did not show personal animosity against the *pro se* plaintiff).  I hold no such bias against Plaintiffs, nor would any previously-held personal opinion interfere with the execution of my duties as a federal judge.  As Justice Oliver Wendell Holmes, Jr. famously chided Judge Learned Hand, it is not my job to further any subjective sense of justice – "it is my job to apply the law."  *See* Judge Jeff Brown, *The Platonic Guardian and the Lawyer's Judge: Contrasting the Judicial Philosophies of Earl Waren and John M. Harlan*, 44 Houston L. Rev. 253, 254 & n.1 (Summer 2007).

**CONCLUSION**

For the reasons set forth above, my comments in a 32-year-old Article would not cause a reasonable, well-informed observer to seriously question my ability to resolve this case on anything other than the merits.  Accordingly, Plaintiff's Motion for Recusal is denied.  It is so ordered.


Honorable Marvin E. Aspen
U.S. District Court Judge


Dated: August 22, 2008