UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., ALAN L. MILLER, JONATHAN BLAIR GARBER, and KEVIN P. STANTON, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 08 C 3693 |
| CITY OF EVANSTON and LORRAINE H. MORTON, Mayor, | ) ) ) ) | |
| Defendants. | ) ) | |

# MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Presently before us is a Rule 12(b) motion to dismiss filed by Defendants City of Evanston ("Evanston") and its Mayor. Defendants contend that Plaintiffs lack standing to assert their claims concerning the constitutionality of Evanston's City Code. For the reasons set forth below, we deny the motion in part, and grant it in part.

## BACKGROUND

Plaintiffs filed this action on June 27, 2008, the day after the Supreme Court announced for the first time, in *Heller v. District of Columbia*, that the Second Amendment of the United States Constitution confers an individual right to keep and bear arms. 128 S. Ct. 2783, 2799, 2822 (2008). Plaintiffs challenged Evanston's then-existing ban on handgun possession, memorialized at City Code § 9-8-2.

In response to the *Heller* decision and this lawsuit, Evanston amended Code §§ 9-8-2 and 9-8-5 ("Amended Code") on August 11, 2008. The Amended Code provides that "[n]o person

shall possess, in the City of Evanston any handgun, except when said handgun is kept at the residence of said person for self-protection, provided that said person possesses a current and valid Firearm Owner's Identification card issued by the State of Illinois." (Am. Code § 9-8-2(A); *see* Am. Compl. ¶ 9.) Code § 9-8-6 classifies unlawful possession of a handgun as a "misdemeanor punishable by fine of not less than $1,500 and/or incarceration for up to six months." (Am. Code § 9-8-6(A); *see* Am. Compl. ¶ 9.) In addition, under the ordinance, the handgun at issue will be confiscated and destroyed. (Am. Code § 9-8-6(B); *see* Am. Compl. ¶ 9.)

In their Amended Complaint, the individual plaintiffs allege that – but for the Amended Code – they "and numerous other NRA members, would forthwith lawfully obtain handguns, transport those handguns to their homes, and keep the handguns at issue at their homes for lawful purposes." (Am. Compl. ¶ 10.) In addition, Plaintiffs contend that they "travel through or need to travel through Evanston" but are prohibited from doing so by the Amended Code. (*Id.* ¶ 11.) They allege that the Amended Code prevents them from transporting a handgun from outside Evanston to their homes, and from their homes to outside Evanston "no matter what the purpose, including sport or repair." (*Id.*) The Amended Complaint also states that "[a]ny members of the Plaintiff NRA who may maintain places of business within the City of Evanston face prosecution, incarceration and fines if they possess a handgun at, or transport a gun to, their own places of business." (*Id.* ¶ 14.) Ultimately, Plaintiffs contend that Amended Code § 9-8-2 infringes on their rights to "keep and bear arms as guaranteed by the Second and Fourteenth Amendments" because "it prohibits transportation of a handgun to the home, possession of a handgun within the home for purposes other than self protection, transportation of a handgun

from the home to another location for lawful purposes, and possession of a handgun at one's place of business." (*Id.* ¶ 18.)

Evanston filed this second motion to dismiss on January 6, 2009, arguing that the Amended Code complies with *Heller* and decrying Plaintiffs' attempts to test the boundaries of that decision.[1] (Mem. at 3-6, 8.) Evanston contends that Plaintiffs lack standing to challenge Code § 9-8-2. (*Id.* at 7; Reply at 9-10.) Evanston further submits that the Amended Code implicitly permits lawful transportation of handguns through Evanston to a resident's home and, moreover, that it has no intention to prosecute Plaintiffs for such transportation. (Mem. at 7-8; Reply at 3-4, 6-8.)

**STANDARD OF REVIEW**

Rule 12(b)(1) requires dismissal of claims over which the federal court lacks subject matter jurisdiction.[2] Jurisdiction is the "power to decide," and must be conferred upon the federal courts. *In re Chicago, Rock Island & Pacific R.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986). In reviewing a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the court may look beyond the complaint to pertinent evidence submitted by the parties. *See United Transp. Union v. Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996). The plaintiff faced with a properly supported 12(b)(1) motion to dismiss bears the burden of proving that the

---

[1] Evanston previously filed a motion to dismiss, which we granted without prejudice on November 24, 2008. (Dkt. No. 33.) At that time, we held that the original complaint was moot in light of the amendments to the City Code. We granted Plaintiffs additional time to replead, which they did on December 16, 2008. (Dkt. No. 34.)

[2] Although Defendants did not style their motion as such, a Rule 12(b)(1) motion challenges subject matter jurisdiction, including a plaintiff's standing. *See, e.g., Phoenix Bond & Indemnity Co. v. Bridge*, 477 F.3d 928, 929 (7th Cir. 2007) (noting that lack of standing is raised under Rule 12(b)(1)).

-3-

jurisdictional requirements have been met. *See Kontos v. U.S. Dep't of Labor*, 826 F.2d 573, 576 (7th Cir.1987).

## ANALYSIS

**I. Standing of Individual Plaintiffs**

Evanston contends that, based on the Amended Complaint, the individual plaintiffs – Alan L. Miller, Jonathan Blair Garber and Kevin P. Stanton – lack standing to challenge § 9-8-2. (Mem. at 2-3, 7-9; Reply at 9-10.) Evanston stresses that the Amended Code does not prohibit transportation of handguns to plaintiffs' homes and thus, there is no remaining controversy. (Mem. at 7-8; Reply at 6-10.) According to Evanston, there is no credible threat that these individuals will face prosecution, particularly because Evanston's Corporation Counsel "represent[ed] to the Court that the plaintiffs will not be prosecuted for transporting handguns to and from their home if transport is in the manner consistent with the state statute." (Mem. at 8.)

Turning to the latter argument, we conclude that Corporation Counsel's representation, as presented in Evanston's brief, is not sufficient to deprive the individual plaintiffs of standing under these circumstances. Theoretically, we may consider evidence outside the four corners of the complaint when evaluating a Rule 12(b)(1) factual attack on jurisdiction.[3] As Plaintiffs point out, however, counsel's representation in a brief does not constitute "evidence" (Resp. at 6), and

---

[3] When reviewing a motion raising a facial attack to jurisdiction, we must accept the well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Ezekial v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). When presented with a factual attack to jurisdiction, we "may properly look beyond the jurisdictional allegations . . . and view whatever evidence has been submitted on the issue to determine whether in fact jurisdiction exists." *Id.* (internal quotation omitted). Given that Evanston has not offered evidence, as above, we ultimately consider this motion an attack on the pleadings and "construe the complaint in favor of the complaining party." *Pennell v. City of San Jose*, 485 U.S. 1, 7, 108 S. Ct. 849, 855 (1988) (*citing Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197, 2206 (1975)).

Evanston has not offered authority or argument to the contrary. "It is universally known that statements of attorneys are not evidence." *Campania Mgmt. Co. v. Rooks, Pitt & Poust*, 290 F.3d 843, 853 (7th Cir. 2002); *see U.S. v. Stevens*, 500 F.3d 625, 628-29 (7th Cir. 2007) (noting that the government's assertions in a brief regarding its possession of the property sought by plaintiff were not evidence); *see Lawson v. Hill*, 368 F.3d 955, 956-58 (7th Cir. 2004) (affirming dismissal of a First Amendment action based on *evidence* – including deposition testimony – that the prosecutor declined to pursue a case against the plaintiff under a flag desecration statute and told police to drop any investigation into her conduct, because he believed the statute was unconstitutional).

Even if we accepted Corporation Counsel's representation as fact, "disavowal of a statute requires that [Evanston] do more than say during litigation that it might never prosecute plaintiff or that it does not intend to prosecute plaintiff." *Horina v. City of Granite City*, No. 05 C 0079, 2005 WL 2085119, at *4 (S.D. Ill. Aug. 29, 2005); *see Wis. Right to Life v. Paradise*, 138 F.3d 1183, 1185-86 (7th Cir. 1998). "In order to disavow the [Amended Code], [Evanston] must instead take some affirmative step against enforcement." *Horina*, 2005 WL 2085119, at *4 (allowing plaintiff's First Amendment claim to proceed, despite defendant's representations "in its brief . . . that until there is a final disposition of this case, or until the ordinance is repealed, it will not enforce the [handbill distribution] ordinance"). For example, in *Wisconsin Right to Life v. Paradise*, the Seventh Circuit dismissed an action brought by a non-profit anti-abortion organization ("WRTL") that sought an order relieving it from the potential obligation of filing as a political action committee under a Wisconsin election law. 138 F.3d at 1184-85. The court held that WRTL did not face a credible threat of persecution, in part because the Wisconsin

Attorney General had issued an opinion decades earlier on the subject, which favored WRTL and advised the state Election Board that it must comply with the dictates of *Buckley v. Valeo*, 424 U.S. 1, 96 S. Ct. 612 (1976). *Wisconsin Right to Life*, 138 F.3d at 1185. In addition, the Election Board promulgated a rule similarly stating that groups, like WRTL, would not be subject to the registration and disclosure requirements at issue in the litigation. *Id.* at 1185. Given these affirmative actions by state officials, the Seventh Circuit concluded that WRTL lacked standing to challenge the election law. *Id.* at 1185 ("Both sides to this litigation agree that [WRTL's activities] do not require the group to register as a political committee. How can a suit present a 'case or controversy' when all litigants are on the same side?"). In the present case, however, Evanston has not demonstrated any such disavowal or clarification of its Amended Code as it applies to Plaintiffs' intended conduct.

With that in mind, we consider whether the individual plaintiffs have standing to pursue this action. "[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992); *see Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81, 120 S. Ct. 693, 704 (2000); *Disability Rights Wis., Inc. v. Walworth Cty. Bd. of Supers.*, 522 F.3d 796, 800 (7th Cir. 2008). These standing requirements of Article III "are well-settled: 'injury in fact, a causal connection between the injury and the defendant's conduct, and likely redressability through a favorable decision.'" *Disability Rights Wis., Inc.*, 522 F.3d at 800 (*quoting Winkler v. Gates*, 481 F.3d 977, 982 (7th Cir. 2007)); *see Lujan*, 504 U.S. at 560-61, 112 S. Ct. at 2136. To satisfy the "injury in fact" element, a plaintiff must allege "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."

*Lujan*, 504 U.S. at 561, 112 S. Ct. at 2136 (internal citations and quotations omitted). Here, Evanston essentially contends that, because the Amended Code complies with *Heller*, the individual plaintiffs have not identified any injury in fact.[4] (Mot. ¶¶ 2-6, 9; Mem. at 2-3, 6-8; Reply at 3-4, 6-7, 9.)

In the Amended Complaint, Plaintiffs allege that § 9-8-2 infringes on their rights " to keep and bear arms." (Am. Compl. ¶ 5.) Specifically, the individual plaintiffs allege that they own or desire to own handguns, and would like to "transport them to their residences in the City of Evanston, and store them there to be used for protection of loved ones and for other lawful purposes." (*Id.* ¶ 12.) They also seek to "transport their handguns within the City of Evanston, and to locations outside the City of Evanston, for lawful purposes." (*Id.*; *see id.* ¶ 13.) Plaintiffs complain that they "face arrest, prosecution, imprisonment, and fines if they possess a handgun outside their homes, including during transport of such handgun, or within their homes for purposes other than self protection." (*Id.* ¶ 13.)

In response, Evanston contends that the Amended Code implicitly permits transportation of a handgun to or from an individual's home. (Mot. ¶¶ 4-6; Mem. at 2-3; Reply at 6-8.) It is true, as Evanston suggests, that we should interpret a statute or ordinance to be reasonable and constitutional, whenever possible. *Vallegas v. Bd. of Fire & Police Comm'rs of Vill. of Downers Grove*, 167 Ill.2d 108, 124, 656 N.E.2d 1074, 1082 (Ill. 1995) ("[W]here possible, courts are to interpret statutes and ordinances in such manner as to avoid raising serious constitutional

---

[4] Evanston's position thus somewhat conflates a 12(b)(1) argument with a 12(b)(6) and/or merits argument. Regardless, at this juncture, the Amended Complaint survives in large part.
    We further observe that Evanston has not suggested – nor could it – that Plaintiffs cannot satisfy the second and third elements of the standing analysis with respect to the transportation issue.

-7-

questions."); *People v. Orth*, 124 Ill. 2d 326, 333-34, 530 N.E.2d 210, 213 (Ill. 1988) ("It is well established that a statute will be presumed constitutional, and where possible will be interpreted to avoid an unconstitutional construction."); *see, e.g., Gray-Bey v. U.S.*, 201 F.3d 866, 869 (7th Cir. 2000) ("[C]ourts must if they can interpret statutes to avoid constitutional problems."); *U.S. v. Vasquez*, 576 F. Supp. 2d 928, 933 (N.D. Ill. 2008) ("It has long been established that there is a presumption of constitutionality with regard to federal statutes."). Although Evanston's argument has intuitive appeal – after all, it would be impossible to lawfully possess a new handgun at home without transporting it there – it overlooks the plain text of the Amended Code.

Section 9-8-2 of the Amended Code provides that "[n]o person shall possess . . . any handgun, except when such handgun is *kept* at the residence of said person for self-protection." (Am. Code § 9-8-2(A) (emphasis added).) Section 9-8-2 thus authorizes possession and storage of a handgun at the home but is silent about its transportation. Even if we assume that Evanston permits initial transportation of a handgun to a home to be "kept" there for self-protection, the statute does not clearly allow subsequent removal of the handgun for maintenance or other lawful activity elsewhere, as Plaintiffs allege.

Moreover, we cannot simply assume at this stage of the litigation that Evanston intended to authorize transportation of a handgun to and from the home for lawful purposes in light of the provisions of § 9-8-5. Section 9-8-5 of the Amended Code describes various exemptions to § 9-8-2's restriction on handgun possession. (Am. Code § 9-8-5(A).) For example, it authorizes possession of a handgun by peace officers, members of the armed services performing official duties, licensed gun collectors, registered owners of antiques, and "persons utilizing a 'starter' handgun solely capable of firing blank ammunition during an athletic event." (*Id.* § 9-8-5(A)(1),

(5), (9-10), (14).) In addition to possession, § 9-8-5 also permits transportation of handguns – but only by those persons also exempted under certain of § 9-8-5's subsections. (*Id.* § 9-8-5(A)(11).) Thus, while § 9-8-5 explicitly allows a high school coach to bring a "starter" gun from a home to a track meet, the Amended Code does not expressly grant any such transportation rights to other lawful handgun owners, including the individual plaintiffs.[5] (*Id.*) Under these circumstances, and given the arguments presented on the pending motion, we cannot conclude, as a matter of law, that the ordinance permits the individual plaintiffs to transport their handguns to the extent desired. On the other hand, we also cannot conclude that it forbids such transportation in violation of the Second Amendment. We decide only that the individual plaintiffs have raised a fair question on this issue and have standing to pursue it.[6]

---

[5] Indeed, the only individuals expressly authorized to transport a handgun from the confines of their homes are: (1) "special agents employed by a railroad or public utility to perform peace functions" and the like, who may possess handguns while "commuting between their homes and places of employment" (Am. Code § 9-8-5(A)(5); (2) gun collectors (*id.* § 9-8-5(A)(9); (3) persons possessing antique handguns (*id.* § 9-8-5(A)(10); (4) established theaters and members of theatrical casts and crews (*id.* § 9-8-5-(A)(12); (5) an established film production organization, with prior written approval (*id.* § 9-8-5(A)(13); and (6) persons utilizing a "starter" gun at an athletic event (*id.* § 9-8-5(A)(14). Although some exempt individuals, like peace officers, are not expressly permitted to transport their handguns, they also are not subject to limitations on where they can possess those handguns, as are Plaintiffs, as well as gun and antique collectors. *See id.* § 9-8-5(A)(1), (9)-(10); *see also id.* § 9-8-2.

[6] We caution the parties to temper their haste. We are not in a position at this stage of the litigation to resolve the ultimate questions lingering in this case. Evanston's motion did not adequately raise, and neither party has sufficiently briefed the issues, including: (1) whether the Second Amendment applies to the City of Evanston via the Fourteenth Amendment; and (2) whether the Amended Code in fact violates the United States Constitution. Both of those questions would require, at a minimum, a far more thorough analysis of *Heller*, prior legal and historical precedent, and the Amended Code. Relatedly, and as Evanston notes in its opening brief (Mem. n.4), another case filed by Plaintiff NRA already has presented the incorporation issue to the Seventh Circuit on appeal. *See, e.g., NRA v. Vill. of Oak Park*, 08 C 3696, *on appeal* 08-4243 (7th Cir.).

For similar reasons, the individual plaintiffs also have standing to allege that the Amended Code prevents them from possessing handguns outside their homes, and inside their homes for reasons other than family security. (Am. Compl. ¶¶ 12-13, 18.) Plaintiffs have not articulated precisely where they desire to take these handguns or what other uses they have for the guns inside their homes. (*Id.*) Nonetheless, the Amended Code plainly prohibits such activities. (Am. Code § 9-8-2(A).) While these rather generic allegations would not carry the day at a later stage of the litigation – a motion for injunctive relief or for summary judgment, for example – they satisfy the minimal pleading requirements of Rule 8(a) and sufficiently demonstrate the individual plaintiffs' standing. (Am. Compl. ¶¶ 12-13, 18.) *See, e.g., Bell Atl. Corp. v. Twombly*, 550 U.S. 544, ----, 127 S. Ct. 1955, 1974 (2007) (explaining that a complaint need not give "detailed factual allegations," but must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action" such that the defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests"); *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618-19 (7th Cir. 2007); *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). Although Evanston protests Plaintiffs' use of this litigation as a vehicle for testing the limits of the *Heller* decision (Mem. at 6; Reply at 5, 9), particularly in light of Evanston's efforts to comply with *Heller,* there is nothing here at present to prevent them from doing so. Such litigation is often how Constitutional law develops.

That being said, the individual plaintiffs lack standing to advance claims on behalf of others who might wish to possess handguns at a place of business and transport handguns to and from a place of business. (Am. Compl. ¶ 14.) As Evanston points out, the Amended Complaint simply does not allege that Plaintiffs Miller, Garber or Stanton maintain a place of business in

Evanston. (*Id.*; *see* Reply at 8-9.) Accordingly, the Amended Code's apparent ban on possession of a handgun at the owner's place of business cannot injure these individual plaintiffs. Without injury in fact, the individual plaintiffs cannot pursue this claim. With that exception, the claims brought by the individual plaintiffs shall proceed.

## II. Standing of Plaintiff NRA

As both parties observe, an association like the NRA has standing to file suit "on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S. Ct. 2434, 2441 (1977); *see also UFCW Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 552-53, 116 S. Ct. 1529, 1534-35 (1996); *Disability Rights Wis., Inc.*, 522 F.3d at 801-02; *Wiggins v. Martin*, 150 F.3d 671, 675 (7th Cir. 1998); *Builders Assoc. of Greater Chi. v. City of Chi.*, 170 F.R.D. 435, 437-39 (N.D. Ill. 1996). Evanston challenges the NRA on each element. (Reply at 9-10.)

As to the first prong, "to establish standing, the [NRA] will have to show that one or more of its members would have standing to bring suit on its own behalf." *Builders Assoc. of Greater Chi.*, 170 F.R.D. at 438. As discussed above, three individual NRA members are also party to this suit and have standing to pursue several claims against Evanston. Accordingly, the NRA has satisfied the first element of the *Hunt* test. *See Access 4 All, Inc. v. Chi. Grande, Inc.*, No. 06 C 5250, 2007 WL 1438167, at *9 (N.D. Ill. May 10, 2007) (holding that association "satisfied the first prong of the *Hunt* test . . . because . . . one of [its] members has sufficiently established standing"); *C.L.U.B. v. City of Chi.*, No. 94 C 6151, 1996 WL 89241, at *14 (N.D.

-11-

Ill. Feb. 27, 1996) (noting that, because three of the organization's members had established individual standing, the organization had thus "allege[d] that any one of its members have been injured by the defendants' conduct"); *see also Springfield Branch, NAACP v. City of Springfield*, 139 F. Supp. 2d 990, 993 (C.D. Ill. 2001) (concluding that NAACP clearly had standing with respect to racial discrimination claims, where two African-American members were plaintiffs).

Nonetheless, like the individual plaintiffs, the NRA does not have standing to assert a claim on behalf of "any members . . . who may maintain places of business within the City of Evanston" who face punishment "if they possess any handgun at, or transport a handgun to, their own places of business." (Am. Compl. ¶ 14.) The NRA has not alleged that any of its members actually own such a place of business and wish to possess a handgun there. As Evanston suggests, the potential injury in fact is purely speculative without such an allegation. (*See* Reply at 9-10.) Although this first *Hunt* element does not require the NRA to explicitly name the member on whose behalf it files suit, at a bare minimum it must allege that there is such a member. *See Disability Rights Wis., Inc.*, 522 F.3d at 802. Thus, based on the allegations here, neither the individual plaintiffs, nor the NRA, have standing to challenge Evanston's ban on possession of a handgun at a place of business.

With respect to the second prong, Plaintiff NRA must demonstrate that the interests at issue in the litigation are "germane to the organization's purpose." *Hunt*, 432 U.S. at 343, 97 S. Ct. at 2441; *see also Wiggins v. Martin*, 150 F.3d 71, 675 (7th Cir. 1998); *Appraisers Coal. v. Appraisal Inst.*, 845 F. Supp. 592, 600-01 (N.D. Ill. 1994). The Amended Complaint provides that the NRA is a non-profit association, whose purposes include: (1) "the protection of the right of citizens to acquire, possess, collect, transport and carry firearms for the lawful defense of their

families, person and property, and other lawful purposes;" (2) the promotion of "public safety and law and order," and "hunting and hunter safety;" and (3) the "foster[ing of] the shooting sports." (Am. Compl. ¶ 2.) The NRA has identified the primary interests of the organization and – despite Evanston's contention to the contrary – those interests are obviously germane to the legal issues presented in this lawsuit, which concern the possession and transportation of handguns.[7] (Reply at 10.)

Plaintiffs contend that their facial attack of the Amended Code, questioning whether it runs afoul of the Second Amendment, is a legal question requiring no individualized proof. (Resp. at 13.) The third element in *Hunt* "does not mean that dismissal is required when the participation of *any* association member is necessary. Rather, dismissal is only required when the lawsuit would require the participation of *each* member of the association." *Appraisers Coal.*, 845 F. Supp. at 601 (*citing Retired Chi. Police Assoc.*, 7 F.3d at 601); *see also Access 4 All, Inc.*, 2007 WL 1438167, at *9 (reviewing relevant authorities and noting that associational standing is allowed "even if *some* individual participation is required"). Here, although individual plaintiffs have already participated in the litigation and will continue to do so, no individualized factual analysis or proof is anticipated. *See C.L.U.B.*, 1996 WL 89241, at *14; *Appraisers Coal.*, 845 F. Supp. at 601. Under these circumstances, the NRA has satisfied the final *Hunt* element and has associational standing to proceed with this litigation.

---

[7] Typically, "the 'germaneness' requirement has teeth only when a conflict of interest exists," *Appraisers Coal.*, 845 F. Supp. at 600, and no such conflict appears in this matter. *See, e.g., Retired Chi. Police Assoc. v. City of Chi.*, 7 F.3d 584, 607 (7th Cir. 1993).

## CONCLUSION

For the reasons set forth above, we deny Evanston's Motion to Dismiss in part. The individual plaintiffs and the NRA generally have standing to pursue their claims concerning the City Code's restrictions on the possession, transportation and use of handguns. We grant the motion, however, with respect to the claim asserted on behalf of hypothetical business owners who might wish to possess a handgun at, and transport a handgun to and from, a place of business in Evanston. It is so ordered.

                                                                                    Honorable Marvin E. Aspen
                                                                                    U.S. District Court Judge

Dated: April 27, 2009